# EXHIBIT – 1

# United States District Court

## DISTRICT OF DELAWARE

MORREALE REAL ESTATE SERVICES, INC.,
an Illinois corporation,

      Plaintiff and Counterclaim Defendant,

v.

GRANITE SOFTWARE, INC.,
a California corporation,

      Defendant and Counterclaim Plaintiff

and

ELMER VASQUEZ, an individual,

      Defendant.

C.D. Cal. Case:  SA  CV  04-1015-AHS  (VBK)

**SUBPOENA DUCES TECUM**

TO:    **CENDANT CORPORATION**

☐YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above proceeding.

| PLACE | DATE AND TIME |
|-------|---------------|
|       |               |

☐YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above proceeding.

| PLACE | DATE AND TIME |
|-------|---------------|
|       |               |

XYOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents):  **SEE ATTACHMENT "A"**

| PLACE: Weir & Partners LLP<br>824 Market Street Mall, Suite 1001<br>PO Box 708<br>Wilmington, DE 19899 | DATE AND TIME:<br>February 10, 2005<br>9:00 a.m. |
|---|---|

☐YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|----------|---------------|
|          |               |

Any subpoenaed organization not a party to this proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed.R.Civ.P. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE:<br><br>*Jeffrey S. Cianciulli*<br>Jeffrey S. Cianciulli, Esquire<br>Attorney for Morreale Real Estate Services, Inc. | DATE:<br><br>February 1, 2005 |
|---|---|

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:<br>Jeffrey S. Cianciulli, Esquire<br>Weir & Partners LLP<br>824 Market Street Mall, Suite 1001<br>PO Box 708<br>Wilmington, DE 19899                    302-652-8181 | |

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| SERVED | 2/2/05 @ 1:45 pm | 2711 Centerville Rd., Ste. 400 Wilmington, DE 19808 | |
| SERVED ON (PRINT NAME) ROBIN | | MANNER OF SERVICE AUTHORIZED TO ACCEPT | |
| SERVED BY (PRINT NAME) ADAM GOLDEN | | TITLE SPS | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____2/2/05_____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

7800 Glenroy Rd., Minneapolis,MN  55439

Rule 45, Fed.R.Civ.P. Parts (c) & (d):

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If an objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not a the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual court of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Attachment "A" to
Subpoena to Cendant Corporation

Definitions

"Granite" means Granite Software, Inc. and/or Granite Software Company.

Documents to be Produced

1.    The January 21, 1999 letter agreement on NRT, Inc. letterhead between NRT Incorporated Settlement Services, West Coast Escrow Company, Guardian Title Company and Equity Title Company, and Granite Software.

2.    All documents prepared, received or exchanged between Granite and NRT, Inc. or NRT Incorporated Settlement Services, West Coast Escrow Company, Guardian Title Company and Equity Title Company relating to proposals to sell or license, or negotiating the sale or license, of the software modules that are the subject of the January 21, 1999 letter agreement.

3.    The bill of sale to which the third paragraph of the January 21, 1999 letter agreement refers.

4.    The non-interest bearing note to which paragraph 1 of the January 21, 1999 letter agreement refers.

5.    All documents describing the "Certain Software and Source Code" that is the subject of the January 21, 1999 letter agreement, including, but not limited to, the modules commonly referred to as "Escrow Link," title payoff, title word processing, title productivity reporting and trading, and escrow closing, and all other modules for which Elmer Vasquez had responsibility during his employment at NRT, Incorporated.

6.    Elmer Vasquez's employee file for his employment at NRT, Incorporated, excluding, however, any and all confidential personal information such as Social Security numbers, and any medical or health related information.

7.    Any and all maintenance agreements between Granite Software and NRT, Inc., NRT Incorporated Settlement Services, West Coast Escrow Company, Guardian Title Company or Equity Title Company.

8.    The April 17, 2002 stock purchase agreement between Cendant Corporation and NRT, Incorporated.

9.  All notices on which Cendant Corporation was copied under Section 10 of the September 11, 2003 Source Code License & Maintenance Services Agreement between Granite and Burrow Closing Management Corporation.

10. All notices on which Cendant Corporation was copied under Section 11.1 of the January 1, 2000 Software License Agreement.

11. All upgrades Granite has offered or provided to Cendant Corporation under the September 11, 2003 Source Code License & Maintenance Services Agreement.

12. All documents that describe or otherwise relate to the relationships between or among, and the history of any ownership between or among, Cendant Corporation, Cendant Settlement Services Group, Inc., Cendant Settlement Group, LLC, Cendant Mobility, Cendant Mortgage, NRT, Inc., the National Realty Trust, Burrow Closing Management Corporation and Southland Title, Inc.

13. All documents, including, but not limited to, accounting ledgers, spreadsheet entries, accounts payable and accounts receivable journals, that relate in any way to any transactions between Granite and Cendant Corporation and/or its subsidiaries or affiliates during the time period between January 1, 1999 and December 31, 2004.

14. All documents or other materials used by Cendant Corporation and/or its subsidiaries or affiliates to market or otherwise describe its or their capabilities to offer third-party relocation services, including residential real estate closing services, during the period of time from January 1, 1999 to December 31, 2004.

Morreale Real Estate Services, Inc, et. al., Plaintiff(s)

vs.

Granite Software, Inc, et. al., Defendant(s)



Service of Process by

**APS International, Ltd.**

**1-800-328-7171**

APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-
~~1111~~

## AFFIDAVIT OF SERVICE -- Corporate

Service of Process on:

--Cendant Corporation
Court Case No. CV 04-1015-AHS (VBK)

WEIR & PARTNERS LLP

Mrs. Jennifer Hiller Wimeroff

1339 Chestnut St, Suite 500

Philadelphia, PA 19107-3519

| | | |
|---|---|---|
| State of: | DELAWARE | ) ss. |
| County of: | NEW CASTLE | ) |

**Name of Server:** _____ADAM GOLDEN_____, undersigned, being duly sworn, deposes and says that at the time of service, s/he was over the age of twenty-one, was not a party to this action;

**Date/Time of Service:** that on the __2nd__ day of ____February____, __2005__, at __1:45__ o'clock __P__. __M__

**Place of Service:** at __Corporation Service Co., 2711 Centerville Rd., Ste 400__, in __Wilmington, DE 19808__

**Documents Served:** the undersigned served the documents described as:

Subpoena

**Service of Process on:** A true and correct copy of the aforesaid document(s) was served on:

Cendant Corporation

**Person Served, and Method of Service:** By delivering them into the hands of an officer or managing agent whose name and title is: __ROBIN__

**Description of Person Receiving Documents:** The person receiving documents is described as follows:

Sex __F__; Skin Color __W__; Hair Color ____RED____; Facial Hair

Approx. Age __35__; Approx. Height __5'7__; Approx. Weight __180 lbs__

☐ To the best of my knowledge and belief, said person was not engaged in the US Military at the time of service.

**Signature of Server:** Undersigned declares under penalty of perjury that the foregoing is true and correct.

Subscribed and sworn to before me this __2nd__ day of ____February____, 20 __05__

_____ 2/2/05

Signature of Server    (Date)

_____

Notary Public    (Commission Expires)

APS International, Ltd.

APS File #: 070183-0001

ANNMARIE M.
COMMISSION
EXPIRES
MARCH 14, 2007
NOTARY PUBLIC
STATE OF DELAWARE

EXHIBIT – 2

# United States District Court

### DISTRICT OF DELAWARE

| | |
|---|---|
| MORREALE REAL ESTATE SERVICES, INC.,<br>an Illinois corporation, | C.D. Cal. Case: SA CV 04-1015-AHS (VBK) |
| Plaintiff and Counterclaim Defendant, | **SUBPOENA DUCES TECUM** |
| v. | |
| GRANITE SOFTWARE, INC.,<br>a California corporation, | |
| Defendant and Counterclaim Plaintiff | |
| and | |
| ELMER VASQUEZ, an individual, | |
| Defendant. | |

TO:     **CENDANT SETTLEMENT SERVICES GROUP**

☐YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above proceeding.

| PLACE | DATE AND TIME |
|---|---|
| | |

☐YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above proceeding.

| PLACE | DATE AND TIME |
|---|---|
| | |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents): **SEE ATTACHMENT "A"**

| PLACE:Weir & Partners LLP<br>      824 Market Street Mall, Suite 1001<br>      PO Box 708<br>      Wilmington, DE 19899 | DATE AND TIME:<br>February 10, 2005<br>10:00 a.m. |
|---|---|

☐YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any subpoenaed organization not a party to this proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed.R.Civ.P. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE:<br><br>*Jeffrey S. Cianciulli*<br>Jeffrey S. Cianciulli, Esquire<br>Attorney for Morreale Real Estate Services, Inc. | DATE:<br><br>February 1, 2005 |
|---|---|

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: | |
|---|---|
| Jeffrey S. Cianciulli, Esquire | |
| Weir & Partners LLP | |
| 824 Market Street Mall, Suite 1001 | |
| PO Box 708 | |
| Wilmington, DE 19899                              302-652-8181 | |

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 2/2/05 @ 1:45 pm | 2711 Centerville Rd., Ste. 400 Wilmington, DE 19808 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| ROBIN | AUTHORIZED TO ACCEPT |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| ADAM GOLDEN | SPS |

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 2/2/05
               DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

7800 Glenroy Rd.
Minneapolis, MN 55439

Rule 45, Fed.R.Civ.P. Parts (c) & (d):

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If an objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not a the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual court of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Attachment "A" to
Subpoena to Cendant Settlement Services Group, Inc.

Definitions

"CSSG" means Cendant Settlement Services Group, Inc.

"Granite" means Granite Software, Inc. and/or Granite Software Company.

"MRES" means Morreale Real Estate Services, Inc., Morreale, Mack & Terry,
P.C. and Global American Title Agency, Ltd.

Documents to be Produced

1.    All documents prepared, received or exchanged by or between Granite and
      CSSG relating to proposals to use and/or license Granite's software, or
      negotiating the entering into, terms and/or conditions of either a license
      agreement or the September 11, 2003 Source Code License & Maintenance
      Services Agreement between Granite Software, Inc. and Cendant Settlement
      Services Group, Inc.

2.    All notices CSSG has provided to Granite under Section 2.B of the September
      11, 2003 Source Code License & Maintenance Services Agreement.

3.    All documents describing or otherwise relating to any "Software Modifications"
      that Granite provided to CSSG under Section 2.C of the September 11, 2003
      Source Code License & Maintenance Services Agreement.

4.    All documents discussing or related to the exercise of any option under Section
      2.I of the September 11, 2003 Source Code License and Maintenance Services
      Agreement.

5.    All other documents or information exchanged under the "Testing and
      Acceptance of Source Code" provisions of Section 2.I of the September 11, 2003
      Source Code License and Maintenance Services Agreement.

6.    All documents describing or otherwise relating to any assignment, transfer,
      delegation, pledge or sale by CSSG to any "Affiliate" under section 9.A of the
      September 11, 2003 Source Code License & Maintenance Services Agreement.

7.    The "Status Report User Manual" to which Exhibit "E" to the September 11, 2003
      Source Code License & Maintenance Services Agreement refers.

8.  All documents describing, listing or otherwise identifying all of CSSG's affiliates, divisions and/or subsidiaries during the period of time from January 1, 1999 to December 31, 2004.

9.  All documents, including, but not limited to, accounting ledgers, spreadsheet entries, accounts payable and accounts receivable journals that relate in any way to any transactions between Granite and CSSG and/or its subsidiaries or affiliates during the time period from January 1, 1999 to December 31, 2004.

10. All documents CSSG used to advertise, market or otherwise promote or describe its business or capabilities to offer and provide third-party relocation services, including residential real estate closing services, during the period of time from January 1, 1999 to December 31, 2004.

11. A complete copy of the most recent version of the "BurrowLink" software application, including all forms, templates, reports and macros, but excluding any commercially sensitive or proprietary information that is the property of CSSG's clients.

Morreale Real Estate Services, Inc, et. al., Plaintiff(s)
vs.
Granite Software, Inc, et. al., Defendant(s)



Service of Process by
**APS International, Ltd.**
**1-800-328-7171**

APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-

## AFFIDAVIT OF SERVICE -- Corporate

Service of Process on:

--Cendant Settlement Services Group
Court Case No. CV 04-1015-AHS (VBK)

WEIR & PARTNERS LLP

Mrs. Jennifer Hiller Nimeroff
1339 Chestnut St, Suite 500
Philadelphia, PA 19107-3519

---

State of: _DELAWARE_ ) ss.
County of: _NEW CASTLE_ )

Name of Server: _ADAM GOLDEN_, undersigned, being duly sworn, deposes and says that at the time of service, s/he was over the age of twenty-one, was not a party to this action;

Date/Time of Service: that on the _2nd_ day of _February_, 20_05_, at _1:45_ o'clock _P_.M

Place of Service: at _Corporation Service Co., 2711 Centerville Rd., Ste 400_, in _Wilmington, DE 19808_

Documents Served: the undersigned served the documents described as:
_Subpoena_

Service of Process on: A true and correct copy of the aforesaid document(s) was served on:
_Cendant Settlement Services Group_

Person Served, and Method of Service: By delivering them into the hands of an officer or managing agent whose name and title is: _ROBIN_

Description of Person Receiving Documents: The person receiving documents is described as follows:
Sex _F_ ; Skin Color _W_ ; Hair Color _RED_ ; Facial Hair _____
Approx. Age _35_ ; Approx. Height _5'7_ ; Approx. Weight _180_ lbs

☐ To the best of my knowledge and belief, said person was not engaged in the US Military at the time of service.

Signature of Server: Undersigned declares under penalty of perjury that the foregoing is true and correct.

_____ 2/2/05
Signature of Server        (Date)

Subscribed and sworn to before me this _2nd_ day of _February_ 20_05_

_____ ANNE M. FRANCIA
Notary Public    (Commission Expires)

**APS International, Ltd.**

APS File #:  070183-0001

EXHIBIT – 3

# PETRIE | SCHWARTZ LLP

ANDREW J. PETRIE
apetrie@petrieschwartz.com

Direct     303 226.7713
Fax        303 226.7777

March 28, 2005

**VIA FACSIMILE**

J. R. Dembiec
Senior Vice President & General Counsel
Cendant Settlement Services Group
3001 Leadenhall Road
Mount Laurel, New Jersey  08054

      Re:    *Morreale Real Estate Services' Subpoenas to Cendant Settlement Services Group and Cendant Corporation*

Dear Mr. Dembiec:

I write to confirm the revisions Morreale Real Estate Services, Inc. ("MRES") is willing to make to its subpoenas duces tecum directed to Cendant Settlement Services Group, Inc. ("CSSG") and Cendant Corporation ("Cendant"), and as to which you advised in our conference call late Friday afternoon that CSSG and Mobility are reciprocally willing and able to proceed to produce responsive documents.

MRES makes these revisions without conceding any issues of relevance or responsiveness in its underlying dispute with Granite Software, Inc. Rather, it is making these revisions in an effort to avoid collateral litigation in the District Courts in which MRES issued the subpoenas, and also to comply with its obligations to avoid imposing any undue burden or expense on CSSG or Cendant as the persons subject to the subpoenas.

I will repeat original document request and then refine the list of documents the parties have agreed Mobility will produce following the same numbering convention that MRES employed on Exhibit "A" to the subpoenas.

With regard to the subpoena it directed to CSSG:

1.    All documents prepared, received or exchanged by or between Granite and CSSG relating to proposals to use and/or license Granite's software, or negotiating the entering into, terms and/or conditions of either a license agreement or the September 11, 2003 Source Code License & Maintenance Services Agreement between Granite Software, Inc. and Cendant Settlement Services Group, Inc.

    <u>Proposed MRES Compromise</u>: After the date on which it served the subpoena on CSSG, Granite produced to MRES what Granite represents to be all of the drafts and emails it exchanged with CSSG. MRES will, therefore, withdraw this component of the subpoena.

J. R. Dembiec
March 28, 2005
Page 2

PETRIE | SCHWARTZ LLP

2.    All notices CSSG has provided to Granite under Section 2.B of the September 11, 2003 Source Code License & Maintenance Services Agreement.

Proposed MRES Compromise:  MRES believes this request only calls for a limited number of documents, if any, and that it should therefore stand.

3.    All documents describing or otherwise relating to any "Software Modifications" that Granite provided to CSSG under Section 2.C of the September 11, 2003 Source Code License & Maintenance Services Agreement.

Proposed MRES Compromise:  MRES needs to know what Granite has provided CSSG. MRES can potentially compromise with only the modifications themselves, and not necessarily the transmittals or discussions (whether on email or otherwise) except if and to the extent there is some mention of MRES.

4.    All documents discussing or related to the exercise of any option under Section 2.I of the September 11, 2003 Source Code License and Maintenance Services Agreement.

Proposed MRES Compromise:  MRES will accept only the signed exercise of the option and proof of payments CSSG made.

5.    All other documents or information exchanged under the "Testing and Acceptance of Source Code" provisions of Section 2.I of the September 11, 2003 Source Code License and Maintenance Services Agreement.

Proposed MRES Compromise:  MRES will accept the document CSSG was to prepare and that is supposed to say whether Granite's software passed or failed "Acceptance Testing" – as MRES understands the procedure, if the software passed, the document is the "Acceptance."

6.    All documents describing or otherwise relating to any assignment, transfer, delegation, pledge or sale by CSSG to any "Affiliate" under section 9.A of the September 11, 2003 Source Code License & Maintenance Services Agreement.

Proposed MRES Compromise:  MRES is not sure how to limit this topic without knowing how many assignments we're talking about.  MRES will consider starting with any assignments involving Mobility, Burrow Closing Management Corporation and NRT.

7.    The "Status Report User Manual" to which Exhibit "E" to the September 11, 2003 Source Code License & Maintenance Services Agreement refers.

Proposed MRES Compromise:  MRES needs this document.  Based on Granite's deposition testimony, it appears it may be something that is part of the electronic files Granite provided CSSG.

J. R. Dembiec
March 28, 2005
Page 3

PETRIE | SCHWARTZ LLP

8.  All documents describing, listing or otherwise identifying all of CSSG's affiliates, divisions and/or subsidiaries during the period of time from January 1, 1999 to December 31, 2004.

Proposed MRES Compromise: MRES will accept the organization chart to which Mr. Perlman referred (and that we discuss on the proposed compromises for Mobility), and the CSSG stock purchase agreement of NRT. We are otherwise looking for when the entities listed on Exhibit A (to the 9/11/03 Source Code License) came under the CSSG / NRT roof.

9.  All documents, including, but not limited to, accounting ledgers, spreadsheet entries, accounts payable and accounts receivable journals that relate in any way to any transactions between Granite and CSSG and/or its subsidiaries or affiliates during the time period from January 1, 1999 to December 31, 2004.

Proposed MRES Compromise: MRES will accept one business record that lists payments CSSG and/or its subs made to Granite under the Source Code License and any payments for enhancements to the source code or software.

10.  All documents CSSG used to advertise, market or otherwise promote or describe its business or capabilities to offer and provide third-party relocation services, including residential real estate closing services, during the period of time from January 1, 1999 to December 31, 2004.

Proposed MRES Compromise: Mr. Perlman previously advised that responding to this would not be burdensome. Here, as with Mobility and in order to reduce any potential burden to CSSG, we are most interested in whether CSSG changed these materials to reflect the in-house capabilities it obtained via Granite, and, therefore, can narrow the time frame to at least 5/31/01 and 12/31/03.

11.  A complete copy of the most recent version of the "BurrowLink" software application, including all forms, templates, reports and macros, but excluding any commercially sensitive or proprietary information that is the property of CSSG's clients.

Proposed MRES Compromise: MRES will accept a version of the software as it existed on September 10, 2003 and as it exists today, subject to the same exclusions of CSSG's proprietary data and narrowing the time frame to the time period between 9/11/03 and 12/31/04.

J. R. Dembiec
March 28, 2005
Page 4

PETRIE | SCHWARTZ LLP

With regard to the subpoena it directed to Cendant:

1.  The January 21, 1999 letter agreement on NRT, Inc. letterhead between NRT Incorporated Settlement Services, West Coast Escrow Company, Guardian Title Company and Equity Title Company, and Granite Software.

    Proposed MRES Compromise:  After the date on which it served the subpoena on Cendant, Granite produced to MRES Granite's copy.  MRES will, therefore, withdraw this component of the subpoena.

2.  All documents prepared, received or exchanged between Granite and NRT, Inc. or NRT Incorporated Settlement Services, West Coast Escrow Company, Guardian Title Company and Equity Title Company relating to proposals to sell or license, or negotiating the sale or license, of the software modules that are the subject of the January 21, 1999 letter agreement.

    Proposed MRES Compromise:  MRES has not obtained these documents from Granite, but will narrow its request to only the bill of sale and promissory note to which that letter agreement refers, and any documents Vasquez provided during the course of those negotiations.

3.  The bill of sale to which the third paragraph of the January 21, 1999 letter agreement refers.

    See no. 2.

4.  The non-interest bearing note to which paragraph 1 of the January 21, 1999 letter agreement refers.

    See no. 2.

5.  All documents describing the "Certain Software and Source Code" that is the subject of the January 21, 1999 letter agreement, including, but not limited to, the modules commonly referred to as "Escrow Link," title payoff, title word processing, title productivity reporting and trading, and escrow closing, and all other modules for which Elmer Vasquez had responsibility during his employment at NRT, Incorporated.

    Proposed MRES Compromise:  MRES withdraws this request.

6.  Elmer Vasquez's employee file for his employment at NRT, Incorporated, excluding, however, any and all confidential personal information such as Social Security numbers, and any medical or health related information.

J. R. Dembiec
March 28, 2005
Page 5

PETRIE | SCHWARTZ ⸱⸱ᴘ

Proposed MRES Compromise: MRES withdraws this request, except to the extent there are file documents concerning the reasons why he left NRT's employ and or his efforts to develop the software that is the subject of the letter agreement.

7. Any and all maintenance agreements between Granite Software and NRT, Inc., NRT Incorporated Settlement Services, West Coast Escrow Company, Guardian Title Company or Equity Title Company.

   Proposed MRES Compromise: MRES withdraws this request.

8. The April 17, 2002 stock purchase agreement between Cendant Corporation and NRT, Incorporated.

   Proposed MRES Compromise: MRES believes this request covers only one document and should be something to which Cendant can readily respond.

9. All notices on which Cendant Corporation was copied under Section 10 of the September 11, 2003 Source Code License & Maintenance Services Agreement between Granite and Burrow Closing Management Corporation.

   Proposed MRES Compromise: MRES withdraws request.

10. All notices on which Cendant Corporation was copied under Section 11.1 of the January 1, 2000 Software License Agreement.

    Proposed MRES Compromise: MRES withdraws this request.

11. All upgrades Granite has offered or provided to Cendant Corporation under the September 11, 2003 Source Code License & Maintenance Services Agreement.

    Proposed MRES Compromise: MRES will accept a version of the software as it existed on September 10, 2003 and as it exists today, subject to the same exclusions of Cendant's proprietary data and narrowing the time frame to the period between 9/11/03 and 12/31/04.

12. All documents that describe or otherwise relate to the relationships between or among, and the history of any ownership between or among, Cendant Corporation, Cendant Settlement Services Group, Inc., Cendant Settlement Group, LLC, Cendant Mobility, Cendant Mortgage, NRT, Inc., the National Realty Trust, Burrow Closing Management Corporation and Southland Title, Inc.

    Proposed MRES Compromise: MRES withdraws this request because it is covered under the subpoenas directed to Mobility and CSSG.

J. R. Dembiec
March 28, 2005
Page 6

PETRIE | SCHWARTZ LLP

13.    All documents, including, but not limited to, accounting ledgers, spreadsheet entries, accounts payable and accounts receivable journals, that relate in any way to any transactions between Granite and Cendant Corporation and/or its subsidiaries or affiliates during the time period between January 1, 1999 and December 31, 2004.

Proposed MRES Compromise:  MRES withdraws this request because it is covered under the subpoena to CSSG.

14.    All documents or other materials used by Cendant Corporation and/or its subsidiaries or affiliates to market or otherwise describe its or their capabilities to offer third-party relocation services, including residential real estate closing services, during the period of time from January 1, 1999 to December 31, 2004.

Proposed MRES Compromise:  MRES withdraws this request.

As I mentioned when we concluded on Friday, MRES needs these documents by no later than mid-April.  I understand you will gather and produce the documents on a "rolling" basis when and as the business people provide them to you, and that the company believes it can produce them promptly.  If you foresee any delays beyond the mid-April time frame please let me know as soon as they arise.

Thank you for working with us to reach these accommodations and resolve these disputed without involving the District Courts.

Very truly yours,

Andrew J. Petrie

AJP/rea
cc:    Jack Smart
       Bruce Perlman
       Jennifer Hiller-Nimeroff

EXHIBIT – 4

**Cendant Settlement Services Group**
3001 Leadenhall Road
Mount Laurel, NJ 08054

Tel: 856-914-8977
Fax: 856-914-8611
walter.dembiec@ssg.com

**Walter F. Dembiec, Jr.**
Senior Vice President &
General Counsel



**CENDANT**
*Settlement Services Group*

April 20, 2005

<u>VIA OVERNIGHT DELIVERY</u>

Andrew Petrie
Petrie & Schwartz, LLP
1776 Sherman Street
Suite 2500
Denver, Colorado 80203

**RECEIVED**

APR 2 1 2005

**PETRIE SCHWARTZ LLP**

Re:     <u>Subpoena to Cendant Settlement Services Group and Cendant Corporation</u>

Dear Mr. Petrie:

Enclosed herewith please find documentation and two (2) compact discs containing information responsive to your subpoenas. Please note, I am responding on behalf of both Cendant Settlement Services Group and Cendant Corporation. As we discussed, our production will continue to the extent there are additional documents which are identified as being covered under your client's request for production. At this time, however, I believe the only additional documents we may have are accounting records demonstrating payments made to Granite   I should be in a position to provide such documents in the near future.

I trust the enclosed satisfies your request and fully discharges our collective obligations under the subpoenas in question. If, however, you have any further questions regarding this matter, please do not hesitate to contact me directly.

Very truly yours,

W. F. Dembiec, Jr.

WFD: wfd
Encls.

cc:

B. Perlman, Esq. (w/o enclosures)
J. Smart, Esq. (Vogt & Resnick, LLP)

EXHIBIT – 5







CENDANT SETTLEMENT SERVICES GROUP

June 2, 2004

Page 7

CSSG 00003

FILE No. 443 01/13 '03 11:47 ID:1-714-367-2020    PAGE  2

JAMES P. KOZEL
FIRST VICE PRESIDENT, SETTLEMENT SERVICES



NRT INCORPORATED
27271 LAS RAMBLAS
Mission Viejo, CA 92691
TEL 714 367 2010
FAX 714 367 3887
jkozel@nrtinc.com

## BILL OF SALE AND ASSIGNMENT

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, NRT Incorporated, Equity Title Company, Guardian Title Company and West Coast Escrow Company (collectively "Seller"), do hereby sell, assign, transfer and set over unto Granite Software ("Buyer"), in accordance with the Letter Agreement dated as of January 21, 1999 among Seller and Buyer, all of Seller's right, title and interest in and to Seller's software modules (including source code) developed by Elmer Vasquez and commonly referred to as Escrow Link, title payoff, title word processing, title productivity, title reporting, title tracking and escrow closing, excluding, however, any rights to the name "Escrow Link" (collectively the "Assets").

TO HAVE AND TO HOLD all the Assets hereby sold, transferred, conveyed, assigned and delivered unto Buyer, its successors and assigns forever.

IN WITNESS WHEREOF, Seller has executed this instrument by its duly authorized officers on this _10_ day of _October_, 1999.

NRT INCORPORATED
EQUITY TITLE COMPANY
GUARDIAN TITLE COMPANY
WEST COAST ESCROW COMPANY

By _____
Name: James P. Kozel
Title: _vice President_

Granite Software.BOS

LEADING COMPANIES · LEADING REAL ESTATE

From:
Nehal Trivedi, VP of IT, Cendant Settlement Services Group

To:
Neil Gulley, CFO, Cendant Settlement Services Group
Greg Blackburn, General Counsel, Cendant Settlement Services Group
Elmer Vasquez, President, Granite Software Company
Dean Schwartz, Esq., Stradley, Ronon, Stevens & Young, LLP

Subject: Acceptance Testing as per Granite Source Code License & Maintenance Services Agreement section 2 I

Date: September 12, 2003

This is to confirm that as per the Granite Source Code License & Maintenance Services Agreement signed 09/11/2003, the following events have occurred:

1.  Cendant IT resources and Granite did work together to prepare for source code reconciliation and testing
2.  Granite did deliver to Cendant and compile for Cendant the Source Code.
3.  Cendant, with assistance from Granite, did test the compiled source code and compare results against Burnet (Minnesota) and APEX environments

Therefore as per the Granite Source Code License and Maintenance Services Agreement, this is notification that the Source Code has passed Acceptance Testing.

Sincerely


Nehal Trivedi
VP of IT
Cendant Settlement Services Group

CSSG 00005

EXHIBIT – 6

# PETRIE | SCHWARTZ LLP

ANDREW J. PETRIE
apetrie@petrieschwartz.com

Direct     303 226.7713
Fax        303 226.7777

May 9, 2005

**VIA FACSIMILE**

J. R. Dembiec
Senior Vice President & General Counsel
Cendant Settlement Services Group
3001 Leadenhall Road
Mount Laurel, New Jersey 08054

Re:     *Morreale Real Estate Services' Subpoenas to Cendant Settlement Services Group and Cendant Corporation*

Dear Mr. Dembiec:

I write to follow-up on Cendant Settlement Services Group's ("CSSG") and Cendant Corporation's ("Cendant") April 20, 2005 document production responding to Morreale Real Estate Services, Inc.'s ("MRES") subpoenas duces tecum (with the amendments to which the parties agreed) and to discuss the items still missing from those productions.

In their productions, CSSG and Cendant produced two CD-ROMs and an additional three documents. The three documents are: (1) an organization chart showing the entities that comprise CSSG; (2) a copy of the October 10, 1999 "Bill of Sale and Assignment" between NRT, Inc., Equity Title Co., Guardian Title Co., and West Coast Escrow Co. ("NRT entities"), on the one hand, and Granite Software, Inc. on the other; and (3) a September 12, 2003 e-mail from Nehal Trivedi of CSSG that concludes with "Therefore as per the Granite Source Code License and Maintenance Services Agreement, this is notification that the Source code has passed Acceptance Testing."

In your April 20 letter, you advised that you expected to produce certain accounting records "demonstrating payments to Granite" and in response to item no. 9 "in the near future." To date, MRES still has not received these documents. Please let me know the status of CSSG and Cendant's production of those additional materials.

The two CD-ROMs appear to contain only copies of electronic files without any further identifiers. Without some form of index to these files – stating which files, if any, respond to MRES's specific requests – Cendant and CSSG's response is not complete. As a general means to clarify what CSSG and Cendant produced and to prevent misunderstandings on MRES's part, please provide a response that follows the order of topics listed in my March 28 letter to you stating whether CSSG and Cendant were unable to locate documents for these items or if the response to these requests are on the CD-ROMs, and identifying which files are responsive to which of MRES's requests. I have enclosed another copy of my March 28 letter to you to assist you in that regard.

J. R. Dembiec
May 9, 2005
Page 2

PETRIE | SCHWARTZ LLP

## THE CSSG SUBPOENA

Because MRES is unable to determine if CSSG has responded to each of the narrowed requests to which the parties agreed, MRES provides this list of other specific missing items numbered in the same way as the March 28 letter:

2.    It does not appear CSSG has produced Notices pursuant to Section 2.B of the September 11, 2003 Source Code License and Maintenance Services Agreement.

3.    It does not appear CSSG has produced any documents describing or otherwise relating to "Software Modifications" under Section 2.C of the September 11, 2003 Source Code License and Maintenance Services Agreement.  MRES could speculate that responsive materials may be on the CD-ROMs, but MRES needs to know which files contain them in order for CSSG's response to be meaningful and appropriate.

4.    CSSG did not produce the signed exercise of the option or proof of payment described in Section 2.I of the September 11, 2003 Source Code License and Maintenance Services Agreement.

6.    CSSG did not produce any documents describing or otherwise relating to any assignment, transfer, delegation, pledge or sale by CSSG to any "Affiliate" under section 9.A of the September 11, 2003 Source Code License & Maintenance Services Agreement, or a list that even describes how many assignments into which CSSG entered.

7.    It does not appear CSSG has produced the "Status Report User Manual" to which Exhibit "E" to the September 11, 2003 Source Code License & Maintenance Services Agreement refers.

10.   CSSG did not produce documents describing changes to its in-house capabilities that it obtained via the Granite Software.

11.   As MRES noted more generally above, it needs more information than the labels on the CD-ROMS of "Granite Docs & Burrowlink SP5" and "SP6 - Code Sent to Granite" to determine the creation dates, identity and distribution of the files CSSG produced.

## THE CENDANT SUBPOENA

Similarly, the following list of specific deficiencies follows the order in my March 28 letter that confirmed Cendant would produce according to MRES's narrowed requests:

2.    Cendant has not produced a copy of the promissory note to the January 21, 1999 agreement between the NRT entities and Granite, nor any documents Vasquez provided during those negotiations.

J. R. Dembiec
May 9, 2005
Page 3

PETRIE | SCHWARTZ LLP

6.  Cendant has not produced any documents showing why Elmer Vasquez left NRT's employ and/or his efforts to develop the software that is the subject of the letter agreement.

8.  Cendant has not produced the April 17, 2002 stock purchase agreement between Cendant Corporation and NRT, Incorporated.

11.  As was the case with the CSSG production, MRES cannot determine what Cendant has produced based upon the very generic, handwritten labels on these CD-ROMs. Please identify on which CD-ROM, if applicable, this information is contained.

*        *        *

Because all of the items CSSG and Cendant need to produce and/or clarify to fulfil their obligations under these subpoenas (as limited by the parties' joint agreement) are all things that you previously advised Cendant and CSSG were willing and able to provide, MRES believes these requests are reasonable.

Please call either me or Jim Wooll if you have any questions.

Very truly yours,

Andrew J. Petrie

AJP/rea

cc:  Jack Smart
     Bruce Perlman
     Jennifer Hiller-Nimeroff

EXHIBIT – 7

# PETRIE | SCHWARTZ LLP

ANDREW J. PETRIE
apetrie@petrieschwartz.com

Direct   303 226.7713
Fax     303 226.7777

June 13, 2005

<u>**VIA FACSIMILE**</u>

J. R. Dembiec
Senior Vice President & General Counsel
Cendant Settlement Services Group
3001 Leadenhall Road
Mount Laurel, New Jersey  08054

      Re:   *Morreale Real Estate Services' Subpoenas to Cendant Settlement Services Group
            and Cendant Corporation*

Dear Mr. Dembiec:

     You have not responded to my May 9 letter.  I enclose another copy of that letter for your ease of reference.

     Please let me know whether Cendant Settlement Services Group ("CSSG") and Cendant Corporation ("Cendant") intend to respond and to produce the documents for which the Morreale Real Estate Services, Inc. ("MRES") subpoenas duces tecum (with the amendments to which the parties agreed) call, and, if so, when MRES can expect those documents.  Similarly, please advise whether CSSG and Cendant will provide the additional information without any further deposition and/or motion practice.

     Please call either me or Jim Wooll if you have any questions.

     Thank you.

                    Very truly yours,

                    Andrew J. Petrie

AJP/rea
cc:   Jack Smart
     Bruce Perlman
     Jennifer Hiller-Nimeroff

# PETRIE | SCHWARTZ LLP

1775 Sherman Street, Suite 2500
Denver, Colorado 80203
Main  303 226.7700
Fax   303 226.7777

## FAX TRANSMISSION COVER SHEET

**Date:**          June 13, 2005

**To:**            Walter "J.R" Dembiec

**Company:**       Cendant Settlement Services Group

**Fax:**           973.496.4641

**Re:**            *Morreale Real Estate Services' Subpoenas to Cendant Mobility and Cendant Settlement Services Group*

**Sender:**        Drew Petrie

**Client No.:**    449.001

*YOU SHOULD RECEIVE ⎯2⎯ PAGES, INCLUDING THIS COVER SHEET.  IF YOU DO NOT RECEIVE ALL THE PAGES OR IF THEY ARE ILLEGIBLE, PLEASE CALL US IMMEDIATELY AT 303.226.7700.*

Message:

IMPORTANT: This communication and its contents are intended for use only by the addressee and contains privileged, confidential information that is protected or exempt from disclosure under applicable law.  Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.  If this communication was received in error, please notify the sender immediately.  Thank you.

* * * COMML ATION RESULT REPORT ( JUN.13.200 0:08AM ) * * *

TTI  PETRIE SCHWARTZ LLP

| FILE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|
| 139  MEMORY TX | | 9-19734964641---449001 | OK | P. 6/6 |

---

REASON FOR ERROR
    E-1) HANG UP OR LINE FAIL          E-2) BUSY
    E-3) NO ANSWER                E-4) NO FACSIMILE CONNECTION

# PETRIE | SCHWARTZ LLP

1775 Sherman Street, Suite 2500
Denver, Colorado 80203
Main  303 226.7700
Fax    303 226.7777

## FAX TRANSMISSION COVER SHEET

**Date:**        June 13, 2005

**To:**          Walter "J.R" Dembiec

**Company:**    Cendant Settlement Services Group

**Fax:**        973.496.4641

**Re:**         *Morreale Real Estate Services' Subpoenas to Cendant Mobility and Cendant Settlement Services Group*

**Sender:**     Drew Petrie

**Client No.:**  449.001

*YOU SHOULD RECEIVE 6 PAGES, INCLUDING THIS COVER SHEET. IF YOU DO NOT*

EXHIBIT – 8

**James Wooll**

| | |
|---|---|
| **From:** | James Wooll |
| **Sent:** | Tuesday, June 21, 2005 10:33 AM |
| **To:** | walter.dembiec@ssg.com' |
| **Cc:** | Andrew Petrie; 'Hiller-Nimeroff, Jennifer' |
| **Subject:** | Follow-up on Morreale/Granite Subpoena |

Mr. Dembiec:

I write to follow-up on the letter Drew Petrie sent you on June 13. In that letter, Drew asked that you respond to his May 9 letter. To date, you have not responded to any of this correspondence.

Please let me know before the close of business on Wednesday, June 22 whether CSSG and Cendant Corporation intend to respond and to produce the documents for which the Morreale Real Estate Services, Inc.'s subpoenas duces tecum (with the agreed amendments) call for. While I would also appreciate a date by which MRES can expect those documents I, at the minimum, would appreciate some form of response to this message.

Thank you.

James L. Wooll
Petrie Schwartz LLP
1775 Sherman Street, Suite 2500
Denver, CO 80203
303.226.7722 (phone)
303.226.7777 (fax)
jwooll@petrieschwartz.com

The information contained in this communication is confidential and should be considered to be attorney work product and/or attorney-client privileged. This communication is the property of Petrie Schwartz LLP and is intended only for the use of the addressee. If you are not the intended recipient, please notify the sender, delete the message, and note that any distribution or copying of this message is prohibited.

# EXHIBIT – 9

## PETRIE | SCHWARTZ LLP

JAMES L. WOOLL
jwooll@petrieschwartz.com

Direct     303 226.7722
Fax        303 226.7777

May 17, 2005

**VIA FACSIMILE**

Jack Smart
Vogt & Resnick LLP
4400 MacArthur Boulevard
Ninth Floor
P.O. Box 7849
Newport Beach, California  92658

Re:   *Granite's May 11 "Designation" of Documents and Follow-up Concerning*
      *Documents Granite and Vasquez Erroneously Filed in the Public Record*

Dear Mr. Smart:

I write to address two separate matters related to your and your clients' application of the Protective Order.

First, Granite and Vasquez's attempted designations of documents in your May 11 letter are not appropriate and they need to correct them.  Second, I write to confirm that Granite and Vasquez have completed the tasks necessary to comply with the Court's March 31 and April 6 Orders concerning confidential MRES documents they improperly placed in the public record.

Your May 11 letter stated in pertinent part:

We have recently received copies of documents and electronically stored information produced by Cendant entities pursuant to your client's subpoena.  Pursuant to the Stipulation and Order protecting confidential material, paragraph 3d, Granite Software hereby designates all materials produced subject to this subpoena as "Confidential-Restricted Material."

As an initial matter this attempted designation comes a full twenty one (21) days after you received copies of the documents and CD-ROMs CSSG and Cendant Corporation produced, and, likewise, twenty one (21) days after I sent your office a copy of the documents Cendant Mobility produced. Your attempted designation is simply too late to be effective.

Next, your attempted designation refers both to "Cendant entities" and to "this subpoena," without distinguishing between the documents Cendant Mobility produced in response to the subpoena served on it, or the three pages of documents and CD-ROMs CSSG/Cendant Corporation produced in response to the two subpoenas served on those two separate entities. It is, as a result, difficult to determine to what you are referring.

Jack Smart
May 17, 2005
Page 2

PETRIE | SCHWARTZ LLP

As for the Cendant Mobility documents (Bates labeled CM 1-326). MRES is hard pressed to see how Granite and Vasquez have any basis to assert that these documents deserve the "Confidential" designation (much less how Granite and Vasquez can make a good-faith assertion that these documents merit the "Confidential-Restricted" level of protection). Furthermore, MRES's employees have already reviewed copies of several of the Cendant Mobility documents shortly after they received them on April 19, and we need to discuss how best to proceed in light of those facts. In any event, MRES requests that you correct the misdesignation of these documents.

Turning to the three documents and two CD-ROMs CSSG/Cendant Corporation produced, MRES does not have enough information about what it is that they contain to dispute or to agree that the two CD-ROMs are appropriately designated as "Confidential-Restricted." We have asked CSSG/Cendant Corporation for additional information, but Mr. Dembiec has yet to respond to Drew Petrie's recent letter ( a copy of which we sent to you). If you have additional information about the content of those CD-ROMs that you believe supports your position, please let us know.

As for the three documents, however, Granite and Vasquez's designation is clearly improper. There is nothing about these documents that has anything to do with either Granite or Vasquez. Please also consider the following information about these documents:

- The first is nothing more than an organization chart that shows the relationships and entities that comprise CSSG. It is well established in the public record of this case (Exh. 4) that CSSG is a customer of Granite, and there is nothing about this document that even mentions Granite. Accordingly, this designation is not appropriate.

- The second is the Bill of Sale and Assignment dated October 10, 1999 between NRT, Inc. and Granite. Since this document does not contain any financial information or add any information beyond that contained in Exhibit 9 (which Granite did not even designate "Confidential"), Granite and Vasquez's designation of it as "Confidential-Restricted" is not appropriate.

- The third is an e-mail from CSSG to Granite confirming that Granite's source code passed CSSG's "Acceptance Testing" process. As stated above, the fact that Granite transferred its software to CSSG is a matter of public record, this document adds nothing further and discloses nothing about Granite, and, therefore, this designation is not appropriate.

Finally, it is also worth noting that while we made counsel for Cendant Mobility, CSSG and Cendant Corporation aware of the existence of the protective order, not one of these companies took any steps to protect this information from disclosure. It therefore appears even more inappropriate and anomalous that Granite and Vasquez now attempt to do so.

\*            \*            \*

On the second topic, please confirm that Granite and Vasquez have removed from the Court's files Exhibits 8 and 12 attached to your March 15 declaration filed in support of their joint

PETRIE | SCHWARTZ LLP

Jack Smart
May 17, 2005
Page 3

motion for summary judgment.  The Court's Orders both stated that Granite and Vasquez had "permission to withdraw" the exhibits and that the exhibits "shall be removed."

Please review the public record and confirm that Exhibits 8 and 12 were properly removed.

Thank you.

Very truly yours,

James L. Wooll

JLW/abl
cc:    Andrew J. Petrie
       Robert M. Ruben

EXHIBIT – 10

RICHARD M. BLUMENTHAL
JEROME A. BUSCH*
CHARLES C. McKENNA
BARNET RESNICK*
JEFFREY M. RESNICK
DAVID A. SHERAK*
JACK SMART

*A Law Corporation

**VOGT & RESNICK,** LLP
ATTORNEYS AT LAW
4400 MacARTHUR BOULEVARD, NINTH FLOOR
P.O. BOX 7849
NEWPORT BEACH, CALIFORNIA  92658-7849
TELEPHONE (949) 851-9001
TELECOPIER (949) 833-3445
www.vogt-resnick.com
law@vogt-resnick.com

May 23, 2005

OF COUNSEL
STEVEN A. EHRLICH
NANCY LEVIN
JAMES D. VOGT*

FILE NO.
3046.2

RECEIVED
MAY 2 6 2005
PETRIE SCHWARTZ LLP

**VIA FACSIMILE AND U.S. MAIL**
(303) 226-7777

James L. Wooll, Esq.
Andrew Petrie, Esq.
Petrie Schwartz LLP
1775 Sherman Street, Suite 2500
Denver, CO 80203

Re:    Morreale Real Estate Services vs. Granite Software

Gentlemen:

We herein respond to Mr. Wooll's letter of May 17, 2005.

As indicated in our correspondence dated May 11, 2005, we have now had the opportunity to review the documents produced by the Cendant entities with our client. Accordingly, we hereby withdraw our confidentiality designation pertaining to documents produced by Cendant Mobility with Bates Stamp Numbers CM 00001 through 326 inclusive. These are the only documents produced by Cendant Mobility of which we have received copies. If there are other documents produced by Cendant Mobility, please advise.

As to CSSG, we have received only three documents. We hereby withdraw our confidentiality designation as to these documents as well. As to the two CD-ROMS which CSSG/Cendant Corporation has produced, these CD-ROMS contain data that most certainly is proprietary to Granite. Therefore, the "Confidential-Restricted Material" applies. It is our view that the information contained on these CD-ROMS exceeds the scope of your client's subpoena. Nevertheless, cognizant of the weight of responsibility that the protective order places upon the use of and dissemination of this data, we shall not object to its production. Again, these are the only documents produced by CSSG of which we have received copies. If there are other documents produced by CSSG, please advise.

In further response to yours of May 17, 2005, we hereby confirm that Exhibits 8 and 12 attached to my March 15, 2005 Declaration have been removed from the file and replaced with the

VOGT & RESNICK, LLP
ATTORNEYS AT LAW

James L. Wooll, Esq.
Andrew Petrie, Esq.
May 23, 2005
Page 2

same documents filed under seal.

      Should you have any questions, please contact the undersigned.

                        Very truly yours,

                        VOGT & RESNICK, LLP
                        Attorneys at Law

                        By_____
                              JACK SMART

JS/alo

cc:    Elmer Vasquez
        David Cronenbold
        Barnet Resnick, Esq.
        John Komar, Esq.
        Robert M. Ruben, Esq.

P:\CLIENTS\G\GraniteSoftware,Inc\Morreale, 3046.2\Corres\Petrie & Wooll Re Cendant Confidential Docs #2.wpd